Hale et al. v. Meegan et al.

THOMAS HALE AND DANIEL F. MILLER, Appellants, *v.* JAMES MEEGAN AND ROGER C. MCALLISTER, Respondents.

1. *Witness—Party—Trustee.*—A trustee having no substantial interest in the matter in controversy is a competent witness for his co-defendant.

2. *Injunction—Dissolution—Damages.*—The statute (R. C. 1855, p. 1249, sec. 13) limits the amount of damages at ten per cent. upon the amount enjoined

to cases in which money has been actually stayed by the injunction; in other cases, the defendants may recover the damages actually sustained.

*Appeal from St. Louis Circuit Court.*

*Espy & Knight*, for appellants.

*Bakewell & Farish* with *T. T. Gantt*, for respondents.

FAGG, Judge, delivered the opinion of the court.

The petition of the appellants (plaintiffs below) shows that they were the owners of two distributive shares of the estate of Richard Phillips, deceased ; that Hale had purchased the share of Eliza Robinson, wife of Joseph Robinson, deceased, and that his co-plaintiff (Miller) had acquired the share of Thomas Phillips, the said Eliza and Thomas being heirs-at-law of the said Richard Phillips, deceased. An order was asked to restrain the defendant Meegan from selling as trustee certain property conveyed to him in trust for the benefit of his co-defendant McAllister by the said Thomas Phillips, Joseph Robinson and wife, together with Robert Phillips, another one of the distributees of said estate.

It charged that Richard Phillips died at the city of St. Louis, in the year 1857, seized and possessed of an estate amounting in value to about $40,000, including among other things a steamboat called *Flying Cloud;* that shortly thereafter McAllister became the administrator of said estate, and in pursuance of an order of the St. Louis Probate Court sold said boat at private sale for the sum of $15,000—Joseph Robinson, Thomas and Robert Phillips being the purchasers; of this amount $2,000 was paid in cash, and five joint notes executed for the remainder, to secure which a deed of trust was executed by the said parties conveying the said boat and tackle to one Burke, as trustee for the benefit of McAllister ; that shortly thereafter there was paid on said notes the sum of $3,900 in cash, and that McAllister by false and fraudulent representations and threats obtained additional security, to-wit, the conveyance to said Meegan in trust of all their several interests in the estate of Richard Phillips, deceased.

The said Robinson, Thomas and Robert Phillips took possession of the boat and continued to run the same until the 2d of Dec., 1858, when said McAllister fraudulently caused the said Burke to take the steamboat out of the possession of the purchasers and to sell her privately, at which sale the said McAllister, then and there being administrator as aforesaid, became the pretended purchaser thereof at the nominal sum of $1,000, and on the same day sold her for $14,000, &c. That McAllister afterwards realized large sums from a policy of insurance on the boat, as well as from several average bonds, all of which had been assigned to him by the purchasers. That the said sum of $14,000 exceeded the balance due on the notes so executed by the purchasers, and that he had also retained and appropriated to his own use the sum of $2,826.44, which had been ascertained in final settlement of said estate to be the distributive share of Robert Phillips, then dead, all of which was claimed by plaintiffs as credits to which they were entitled.

Plaintiffs alleged that the assets of the estate were not properly accounted for by McAllister; that a correct settlement of his accounts with the estate would show that these notes executed by the said parties for the said steamboat in the year 1857 had been fully paid off and discharged, and requiring him to account, &c.

The answers of defendants were separate. Meegan denied any connection with the whole matter except as trustee, and McAllister denied all the allegations of fraud or improper conduct upon his part, denied that the sale at which he became the purchaser of the boat was private, or that he bought as the administrator of the estate of Richard Phillips, and that he had received the amounts charged to have been collected by him on the policy of insurance or the average bonds.

A motion was made by the defendants to dissolve the injunction, upon the trial of which there was an investigation of all the facts in the case, upon which it was determined by the court that at the sale made by Burke in the month of Decem-

ber, 1858, McAllister "purchased in trust, for the creditors and distributees of the estate of Richard Phillips"; and, in order to ascertain how the account stood between him and the estate, the referee was "ordered to have an account stated charging McAllister with all money received as administrator of said estate, and also as fiduciary owner of the said steamboat *Flying Cloud*, and as holder of the notes and bills of the several purchasers of said boat, and with such notes and bills as remain not collected, and crediting him ,with all moneys properly paid by him on account of said estate and said boat, and also with the several notes and bills taken at divers times for purchase money of said boat and surrendered by him to such referee, or to this or the Probate Court, to be held subject to the final decision of the case." Pursuant to said direction an account was taken, and the estate found to be indebted to McAllister in the sum of $2,331.28.

The exceptions taken to the report of the referee being heard and considered by the court were overruled, and the motion to dissolve the injunction sustained. The bill was then dismissed and an assessment of damages made by the court; all of which being properly excepted to by the plaintiffs below, the case is brought to this court by appeal.

There is no ground, so far as the testimony presented in the bill of exceptions shows for the conclusion, that McAllister's purchase of the boat at the trustee's sale in December, 1858, was "in trust for the creditors and distributees of the estate of Richard Phillips." No testimony tending to prove that fact has been found; on the contrary, it appears that he had undertaken to become personally responsible to the estate for the whole amount agreed to be paid for the boat by Robinson, Thomas and Robert Phillips, by actually charging himself with it upon his settlement in the Probate Court. The deed of trust had been taken for his benefit and not the estate. The sale was shown to have been made publicly, as directed by the terms of the deed. The fact of its being struck off to McAllister for the sum of $1,000 is explained by showing that there was at the time lien debts against the

boat to the amount of $10,000, all of which he paid. It is wholly immaterial to the heirs-at-law of Richard Phillips what became of the boat after the first sale. The estate received the entire benefit of the proceeds of that sale ; and the subsequent history of the boat—unfortunate and disastrous as it proved to be for McAllister as well as the other parties connected with it—was a matter of no consequence whatever in determining the amount of the distributive share of each one of the heirs-at-law of Richard Phillips. There was really no equity in the bill as the case is presented here, and the directions upon which the account was to be stated by the master were most clearly erroneous.

However, the brief of the appellants' counsel presents but three points for the consideration of this court. First, that Meegan was incompetent to testify on behalf of his co-defendant McAllister. By the act approved February 12, 1857, "a party may be examined as a witness in behalf of his co-plaintiff or of a co-defendant as to any matter in which he is not jointly interested or liable with such co-plaintiff or co-defendant, and as to which a separate and not joint verdict or judgment can be rendered. (Sess. Acts 1856–7, p. 81.) Meegan could only be regarded as a nominal party, without any interest that could affect his competency, and was properly admitted to testify.

The second error complained of, being the refusal of the court to sustain the exceptions to the report of the referee, need not be noticed for the reasons expressed heretofore in relation to the order of the court making the reference. The action of the referee seems to have been mainly in conformity to the order and with the views entertained by the court below in reference to the necessity of having an account stated. It was proper that it should be sustained.

The third and last point is that the Circuit Court committed error in the assessment of damages. In the case of the City and County of St. Louis v. Alexander, 23 Mo. 483, this court undertook to give a construction to the statute which authorizes an assessment of damages in these cases. (R. C.

1855, p. 1249.) It was held substantially in that case, and we think correctly so, that the object of the statute was to fix the measure of damages where money had been actually stopped by the injunction, and not to confine the damages exclusively to that subject. It does not prevent the recovery of any other damages which the parties might have sustained by reason of the injunction, and hence the court in such cases are not to be restricted to ten per cent. upon money atually released by the dissolution.

It is urged that the allowance of the sum of $1,000 as an attorney's fee was improper, for the reason that it constituted no part of the damages that could be legally assessed in such cases. The evidence upon which the allowance was made is not preserved in the bill of exceptions, if any was taken. But in any event the whole matter was within the knowledge of the court, and, a trial by jury being waived by the parties, we do not feel at liberty to inquire into the reasons which controlled the court in making the allowance, but must conclude they were sufficient.

The judgment will be affirmed. The other judges concur.